1

**BAKER BOTTS L.L.P.**
Kevin Sadler (SBN# 283765)

2
kevin.sadler@bakerbotts.com
1001 Page Mill Road

3
Building One, Suite 200
Palo Alto, CA 94304-1007

4
Telephone:    (650) 739-7500
Facsimile:    (650) 739-7699

5

Van H. Beckwith (*admitted pro hac vice*)

6
van.beckwith@bakerbotts.com
Ryan L. Bangert (*admitted pro hac vice*)

7
ryan.bangert@bakerbotts.com
2001 Ross Avenue

8
Suite 600
Dallas, TX 75201-2980

9
Telephone:    214-953-6500
Facsimile:    214-953-6503

10

Attorneys for Defendants

11
DR PEPPER SNAPPLE GROUP, INC., and
DR PEPPER/SEVEN UP, INC.

12

UNITED STATES DISTRICT COURT

13
SOUTHERN DISTRICT OF CALIFORNIA

14
RICHARD FEFFERMAN, on behalf of | Case No. 13-cv-0160-H-KSC

15
himself and all others similarly situated,

16
                                    Plaintiff,

**MEMORANDUM OF POINTS AND**

17
           v.
**AUTHORITIES IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS**
**AMENDED CLASS ACTION**

18
DR PEPPER SNAPPLE GROUP, INC., DR
PEPPER/SEVEN UP, INC., and DOES 1
**COMPLAINT (RULES 12(B)(1), 12(B)(6),**
**AND 9(b))**

19
through 100, inclusive,

20
                                    Defendants.
**Date: March 18, 2013**
**Time: 10:30 a.m.**

21
**Courtroom: 15A-15th Floor**
**Judge: Marilyn L. Huff**

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I. SUMMARY OF ARGUMENT ................................................................................. 1

II. SUMMARY OF ALLEGED FACTS ...................................................................... 3

III. APPLICABLE LEGAL STANDARDS ................................................................. 4

IV. ARGUMENT AND AUTHORITIES ..................................................................... 5

    A.   This lawsuit must be dismissed because Plaintiff lacks standing to pursue declaratory and injunctive relief. ......................................................................................... 5

    B.   Plaintiff's fruit and antioxidant claims are preempted. .................................................. 8

        1.   Plaintiff's fruit claims are preempted because they would impose requirements that are not "identical to" federal law. ........................................................ 10

        2.   Plaintiff's antioxidant claims are preempted because they, too, would impose requirements that are not "identical to" federal law............................................. 12

    C.   Plaintiff has failed to plead a claim based on the FDA's Fortification Policy because the Policy does not create an enforceable private right of action. ....................................... 13

    D.   Plaintiff's antioxidant, fruit, Fortification Policy, and regulatory claims are facially implausible and inadequately pled. ................................................................... 15

    E.   Plaintiff fails to state claims pertaining to any advertising, marketing, or promotion of 7UP Antioxidant apart from the product labels and website. ....................................... 19

    F.   In the alternative, this action should be dismissed under the first-to-file rule. .............. 19

V. CONCLUSION ..................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ackerman v. Coca-Cola,*
No. 09-0395, 2010 WL 2925955 (E.D.N.Y. July 21, 2010)...................................... 15

*Adoma v. Univ. of Phoenix,*
711 F. Supp. 2d 1142 (E.D. Cal. 2010)................................................................. 20

*Alltrade, Inc. v. Uniweld Prods., Inc.,*
946 F.2d 622 (9th Cir. 1991)................................................................................ 19

*Armstrong v. Davis,*
275 F.3d 849 (9th Cir. 2001).................................................................................. 6

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ........................................................................................ 5, 15

*Askin v. Quaker Oats Co.,*
No. 11-CV-111, 2007 WL 517491 (N.D. Ill. Feb. 15, 2012) ............................... 20

*Astiana v. Ben & Jerry's Homemade, Inc.,*
No. 10-4387, 2011 WL 2111796 (N.D. Cal. May 26, 2011)................................... 9

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007).............................................................................................. 5

*Blue Cove Corp. v. Odyssey Medical, Inc.,*
No. 10-cv-2606-IEG(BGS), 2011 WL 1157866 (S.D. Cal. Mar. 28, 2011).............. 19, 20, 21

*Buckman Co. v. Plaintiffs' Legal Comm.,*
531 U.S. 341 (2001)............................................................................................. 8

*Campion v. Old Republic Home Protection Co.,*
861 F. Supp. 2d 1139 (S.D. Cal. 2012) ............................................................. 7, 8

*Cattie v. Wal-Mart Stores, Inc.,*
504 F. Supp. 2d 939 (S.D. Cal. 2007) ............................................................. 6, 7, 8

*Dvora v. Gen. Mills, Inc.,*
No. 11-1074-GHW, 2011 WL 1897349 (C.D. Cal. May 16, 2011) ................... 10, 11

*Edwards v. Marin Park, Inc.,*
356 F.3d 1058 (9th Cir. 2004)............................................................................... 5

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC) Inc.,*
528 U.S. 167 (2000)............................................................................................. 6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Gest v. Bradbury*,
    443 F.3d 1177 (9th Cir. 2006) ................................................................................. 6

*Grenier v. Spencer*,
    No. 2:12-cv-0258 KJM GGH PS, 2013 WL 211130 (E.D. Cal. Jan. 18, 2013) ...................... 4

*Hairston v. S. Beach Beverage Co.*,
    No. 12-1429-JFW, 2012 WL 1893818 (C.D. Cal. May 18, 2012) ...................... 10, 15, 16, 18

*Hodgers-Durgin v. de la Vina*,
    199 F.3d 1037 (9th Cir. 1999) ................................................................................. 6

*Inherent.com v. Martindale-Hubbell*,
    420 F. Supp. 2d 1093 (N.D. Cal. 2006) ........................................................... 20, 21

*Intersearch Worldwide v. Intersearch Group, Inc.*,
    544 F. Supp. 2d 949 (N.D. Cal. 2008) .................................................................. 20

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ........................................................................ 5, 19

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) ............................................................................................. 4

*Lavie v. Procter & Gamble Co.*,
    105 Cal. App. 4th 496 (Cal. Ct. App. 2003) ......................................................... 16

*McKinniss v. Sunny Delight Beverages Co.*,
    No. 07-02034-RGK, 2007 WL 4766525 (C.D. Cal. Sept. 4, 2007) ........................... 11

*Mut. Pharm. Co. v. Ivax Pharms., Inc.*,
    459 F. Supp. 2d 925 (C.D. Cal. 2006) ................................................................ 14

*Nat'l Council for Improved Health v. Shalala*,
    122 F.3d 878 (10th Cir. 1997) .............................................................................. 9

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) ............................................................................................. 6

*Pacesetter Sys., Inc. v. Medtronic, Inc.*,
    678 F.2d 93 (9th Cir. 1982) ................................................................................ 19

*Parks v. Los Angeles Unified Sch. Dist.*,
    No. 01-55135, 33 Fed. App'x 291 (9th Cir. Mar. 21, 2002) ...................................... 6

*Persepolis Enter. v. United Parcel Serv., Inc.*,
    No. C-07-02379-SC, 2007 WL 2669901 (N.D. Cal. Sept. 7, 2007) .......................... 20

*POM Wonderful LLC v. Coca-Cola Co.*,
    679 F.3d 1170 (9th Cir. 2012) ............................................................................. 14

*Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.*,
    642 F. Supp. 2d 1112 (C.D. Cal. 2009) ................................................................. 9

*Robinson v. Hornell Brewing Co.*,
    No. 11-2183 ........................................................................................................ 7, 8

*Rooney v. Cumberland Packing Corp.*,
    No. 12-cv-0033-H, 2012 WL 1512106 (S.D. Cal. Apr. 16, 2012) ........................ 16

*Safe Air for Everyone v. Meyer*,
    373 F.3d 1035 (9th Cir. 2004) ............................................................................... 4

*Sopcak v. N. Mountain Helicopter Serv.*,
    52 F.3d 817 (9th Cir. 1995) ................................................................................... 4

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) ............................................................................... 5

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) .............................................................................................. 6

*Turek v. Gen. Mills, Inc.*,
    662 F.3d 423 (7th Cir. 2011) ................................................................................. 9

*Veal v. Citrus World, Inc.*,
    No. 2:12-cv-801-IPJ, 2013 WL 120761 (N.D. Ala. Jan. 8, 2013) ..................... 7, 8

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) .......................................................................... 5, 19

*Vieira v. Woodford*,
    No. C 00-0043 PJH, 2002 WL 1226852 (N.D. Cal. May 30, 2002) ...................... 4

*Werbel v. Pepsico, Inc.*,
    No. 09-04456, 2010 WL 2673860 (N.D. Cal. July 2, 2010) ............................... 15

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000) ............................................................................... 4

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008) ............................................................................... 16

*Wyeth v. Levine*,
    555 U.S. 555 (2009) .............................................................................................. 9

**STATUTES**

21 U.S.C. § 331(b) .................................................................................................. 8

21 U.S.C. § 337(a) ............................................................................................. 8, 14

- iv -

21 U.S.C. § 343-1.................................................................................................. 2

21 U.S.C. § 343(i)(2) ..................................................................................... 10, 11

21 U.S.C. § 343-1(a)(1)-(3)................................................................................. 9

21 U.S.C. § 343-(1)(a)(2) ............................................................................... 10, 11

21 U.S.C. § 343-1(a)(2), (3) ............................................................................... 11

21 U.S.C. § 343-1(a)(5) ...................................................................................... 13

21 U.S.C. § 343(i), (k) ........................................................................................ 11

21 U.S.C. § 343(a) .............................................................................................. 18

Cal. Health & Safety Code § 110660……….................................................... 19

Cal. Health & Safety Code § 110665……….................................................... 16

Cal. Health & Safety Code § 110670………….................................................. 16

Cal. Health & Safety Code § 110765……….................................................... 19

Nutrition Labeling and Education Act of 1990, Pub. L. No. 101-535, 104 Stat. 2353…............. 10

**OTHER AUTHORITIES**

21 C.F.R. § 1.21 ................................................................................................. 18

21 C.F.R. § 10.115(d)(1)..................................................................................... 14

21 C.F.R. § 74.340(c).......................................................................................... 17

21 C.F.R. § 100.1(c)(4) ........................................................................................ 9

21 C.F.R. § 101.3(b) ........................................................................................... 17

21 C.F.R. § 101.9(c)(8)(iv). ................................................................................ 12

21 C.F.R. § 101.22(i) .......................................................................................... 10

21 C.F.R. § 101.22(i)(1)...................................................................................... 10

21 C.F.R. § 101.30(c).......................................................................................... 11

21 C.F.R. § 101.54(c).......................................................................................... 12

21 C.F.R. § 101.54(e).................................................................................... 14, 15

21 C.F.R. § 101.54(e)(1)(ii), (f)(3)..................................................................... 14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

21 C.F.R. § 101.54(g) ........................................................................................................ 14

21 C.F.R. § 101.54(g)(1)–(4) ........................................................................................... 12

21 C.F.R. § 101.54(g)(4) ................................................................................................... 13

21 CFR § 101.65(d) ........................................................................................................... 14

21 C.F.R. § 101.65(d)(iv) .................................................................................................. 15

21 CFR 104.20 ................................................................................................................... 14

21 C.F.R. § 104.20(a) ........................................................................................................ 18

21 C.F.R. § 172.800 ........................................................................................................... 17

21 C.F.R. § 172.804 ........................................................................................................... 17

21 C.F.R. § 184.1866 ......................................................................................................... 17

45 Fed. Reg. (Jan. 25, 1980)…………… ......................................................................... 14

56 Fed. Reg. (Nov. 27, 1991)………... ............................................................................ 13

60 Fed. Reg. (Dec. 28, 1995)…………….. ...................................................................... 13

62 Fed. Reg. (Sept. 23, 1997)…………... ........................................................................ 13

H.R. Rep. No. 101-538 (1990), reprinted in U.S.C.C.A.N. 3336…. .............................. 10

U.S. Const., art. VI, cl. 2……... ......................................................................................... 9

MEMORANDUM OF PTS. & AUTHS. IN SUPPORT OF
MOTION TO DISMISS (RULES 12(B)(1), 12(B)(6), AND 9(B))
NO. 13-CV-0160-H-KSC

1

## I.      SUMMARY OF ARGUMENT

2        This case is part of a recent wave of class-action lawsuits in which plaintiffs complain

3   about food and beverage labeling that is factually correct and, in many cases, required by federal

4   law.  Plaintiffs seek to use these lawsuits as vehicles to recover attorney's fees and impose their

5   own opinions and preferences about food and beverage labeling in contravention of the federal

6   Food and Drug Administration's ("FDA") considered judgment.

7        This lawsuit is no different.  Plaintiff Richard Fefferman ("Plaintiff") alleges that he

8   purchased 7UP Antioxidant soft drink products after reading the word "Antioxidant" juxtaposed

9   with images of cherries, berries, and pomegranates on the product labels.  The 7UP Antioxidant

10  products are fruit-flavored soft drinks that contain a well-recognized antioxidant, vitamin E.

11  There is no dispute that the ingredients panel on 7UP Antioxidant's label accurately discloses the

12  ingredients contained in the product.

13       Plaintiff claims, nonetheless, that 7UP Antioxidant is mislabeled because it does not

14  contain real fruit, derive its antioxidant content from real fruit, or confer the same health benefits

15  as eating real fruit.  Plaintiff also claims that 7UP Antioxidant is mislabeled because it does not

16  contain a sufficient quantity of antioxidant vitamin E to confer a scientifically-proven health

17  benefit, and contains various FDA-approved ingredients that Plaintiff believes may be harmful.

18  In addition, Plaintiff claims that the addition of vitamin E to 7UP Antioxidant violates the FDA's

19  Fortification Policy, a non-binding guidance document from the FDA regarding fortification of

20  foods.  Based on those theories, Plaintiff brings claims for violations of California's Unfair

21  Competition Law ("UCL") and False Advertising Law ("FAL").

22       Despite alleging that he and the putative class paid a "premium" price for 7UP

23  Antioxidant, Plaintiff only seeks declaratory and injunctive relief and attorney's fees.[1]  That is

24  entirely duplicative of the relief sought in a much broader first-filed lawsuit pending in the

25  Central District of California.  The only thing Plaintiff's Complaint adds to that first-filed lawsuit

26

27  _____

    [1] Plaintiff's claim for injunctive relief barring the use of "Antioxidant" in the labeling and advertising of 7UP
28  products will become moot later this year when Dr Pepper/Seven Up implements its already-announced plan to stop
    production and distribution of 7UP Antioxidant.

is a claim for fees incurred by a different set of lawyers.  All of Plaintiff's claims should be dismissed for several reasons.

First, Plaintiff lacks Article III standing to pursue declaratory and injunctive relief because he has not alleged that he will purchase 7UP Antioxidant products in the future.  To obtain a declaratory judgment or injunction, a plaintiff must demonstrate that he is realistically threatened by a repetition of the harmful conduct for which he seeks relief.  Plaintiff will not be further injured by the labeling and advertising of 7UP Antioxidant because he purportedly has learned "the truth" about that labeling and advertising and, as a result, will no longer purchase 7UP Antioxidant.  Accordingly, this lawsuit must be dismissed because Plaintiff has failed to meet the threshold requirement that he plead standing.

Second, Plaintiff's claims are preempted because they would impose labeling requirements that differ from those imposed by federal law.  Detailed regulations promulgated by the FDA govern the permitted use of both of the key elements of which Plaintiff complains—the use of fruit images and the word "antioxidant" on food and beverage labels.  Plaintiff attempts to set himself above the FDA and revise its regulations to suit his personal opinions and preferences.  The Federal Food, Drug, and Cosmetic Act ("FDCA") preempts laws that impose labeling requirements that are not identical to those promulgated by the FDA, thereby prohibiting attempts by private litigants to usurp the FDA's authority.  21 U.S.C. § 343-1.

Third, Plaintiff's claims based on the FDA's Fortification Policy must be dismissed because the Policy cannot be enforced by a private litigant.  The Policy is non-binding and creates no private cause of action.  Moreover, the Policy does not give rise to a claim under California's Sherman Law, which purports to allow California consumers to enforce federal statutes and regulations—but not non-binding "guidance" documents—regarding the fortification of certain foods.  To allow Plaintiff to enforce the Fortification Policy against DPSU would create the anomalous (and incorrect) result of a private litigant possessing more authority to enforce an FDA-issued guidance document than the FDA itself.

Fourth, Plaintiff's fruit and antioxidant labeling claims and claims based on the Fortification Policy are implausible and must be dismissed as inadequately pled.  Plaintiff's attack

on use of the word "antioxidant" on the label of 7UP Antioxidant relies upon representations that appear nowhere on the product label or advertising.  They also rely upon unfounded innuendo and inference that is directly contradicted by the express language of the label.  As a matter of law, no reasonable consumer would be deceived by 7UP Antioxidant's labeling.  In addition, no reasonable consumer would rely upon DPSU's compliance with the non-binding (and esoteric) Fortification Policy to inform her purchase of 7UP Antioxidant.

Fifth, Plaintiff's claims directed at advertising, marketing, or promotions other than the 7UP Antioxidant product labels and website must be dismissed because they are not pled with sufficient particularity.  Nowhere in his Complaint does Plaintiff identify with specificity the advertising, marketing, promotions, or materials of which he complains.

Sixth, in the alternative, Plaintiff's lawsuit should be dismissed under the first-to-file rule because a first-filed lawsuit in a different judicial district, *Green v. Dr Pepper Snapple Group, Inc.*, No. 2:12-cv-09567 (C.D. Cal.), raises the same issues and involves the same parties as this lawsuit.  And even if the Court declines to dismiss this case under the first-to-file rule, it should stay or transfer it to the Central District of California in the interest of judicial comity.

## II.    SUMMARY OF ALLEGED FACTS

Plaintiff filed this lawsuit on December 13, 2012, over one month after the nearly identical *Green* lawsuit was filed in the Central District of California on November 8, 2012.  The crux of Plaintiff's lawsuit is that he was allegedly fooled by DPSU's use of fruit images and the word "antioxidant" on the label of 7UP Antioxidant products.  Plaintiff claims that when he read the word "antioxidant" juxtaposed with images of berries and cherries on the 7UP Antioxidant product label, he became convinced that the products "provided health benefits associated with the Antioxidants in real cherries, berries or pomegranates."  Compl. ¶ 14.  He asserts that he would not have purchased the products had he known that they did not contain real fruit, did not derive their antioxidant content from real fruit, and did not contain sufficient amounts of the antioxidant vitamin E to confer health benefits.  *Id.*

Plaintiff seeks certification of a class of all persons in California who purchased 7UP Antioxidant products from 2008 to present.  *Id.* ¶¶ 2, 42.  He claims that this large and diverse

MEMORANDUM OF PTS. & AUTHS. IN SUPPORT OF
MOTION TO DISMISS (RULES 12(B)(1), 12(B)(6), AND 9(B))
NO. 13-CV-0160-H-KSC

group of putative class members reviewed the labels of 7UP Antioxidant and concluded that it contained real fruit, that the vitamin E in 7UP Antioxidant was from real fruit, and that the health benefits to be gained from drinking 7UP Antioxidant were akin to those gained by eating real fruit. *Id.* ¶¶ 22–29, 34–36. He also asserts claims on behalf of the putative class for DPSU's alleged failure to comply with the FDA's non-binding Fortification Policy, which provides guidance regarding fortifying certain foods. *Id.* ¶¶ 30–33. He claims that he and the putative class members throughout California paid an indeterminate "premium price" for 7UP Antioxidant products without explanation of where he purchased the products or what he may have paid for 7UP Antioxidant products versus a comparable and available soft drink product without such Antioxidant labeling. *Id.* ¶ 6.

For those alleged wrongs, Plaintiff demands declaratory and injunctive relief and his attorney's fees and costs. Despite alleging that he and members of the putative class paid a premium for 7UP Antioxidant, Plaintiff does not seek restitution, disgorgement, or damages.

### III.   APPLICABLE LEGAL STANDARDS

A motion under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the subject matter jurisdiction of a court to hear a case before it. "Federal courts are courts of limited jurisdiction," and "possess only that power authorized by Constitution and Statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "When [a] district court lacks subject matter jurisdiction over the claim" before it, then "[d]ismissal is appropriate under Rule 12(b)(1)." *Vieira v. Woodford*, No. C 00-0043 PJH, 2002 WL 1226852, at *1 (N.D. Cal. May 30, 2002). "On a rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, [the] plaintiff bears the burden of proof that subject matter jurisdiction exists." *Grenier v. Spencer*, No. 2:12-cv-0258 KJM GGH PS, 2013 WL 211130, at *1 (E.D. Cal. Jan. 18, 2013) (citing *Sopcak v. N. Mountain Helicopter Serv.*, 52 F.3d 817, 818 (9th Cir. 1995)). "Jurisdictional attacks can be either facial or factual." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A "facial attack . . . asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

A complaint must be dismissed under Rule 12(b)(6) of the Federal Rules of Civil

1  Procedure unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief

2  that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*

3  *v. Twombly*, 550 U.S. 544, 570 (2007)).  Although the Court must accept factual allegations as

4  true for purposes of a motion to dismiss, this tenet is "inapplicable to legal conclusions."  *Id.*

5  After stripping away the "conclusory statements" in the complaint, the remaining factual

6  allegations must do more than "create[] a suspicion of a legally cognizable right of action;" they

7  must "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555 (quotations

8  omitted).  In making this "context-specific" determination, the Court must "draw on its judicial

9  experience and common sense."  *Iqbal*, 556 U.S. at 679.  This analysis provides a critical

10 gatekeeping function, because claims must be sufficiently plausible "such that it is not unfair to

11 require the opposing party to be subjected to the expense of discovery and continued litigation."

12 *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

13     Rule 9(b) of the Federal Rules of Civil Procedure requires that the plaintiff "state with

14 particularity the circumstances constituting fraud," and this standard specifically "appl[ies] to

15 claims for violations of the . . . UCL," as well as the FAL, where—as here—these claims are

16 based on a fraud theory.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009); *Vess v.*

17 *Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003).  Accordingly, a plaintiff's

18 allegations must be "specific enough to give defendants notice of the particular misconduct,"

19 including "the 'who, what, when, where, and how' of the misconduct charged," *Kearns*, 567 F.3d

20 at 1124 (citations omitted), and "the time, place, and specific content of the false representations,"

21 *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) (citations omitted).

## IV.    ARGUMENT AND AUTHORITIES

### A.    This lawsuit must be dismissed because Plaintiff lacks standing to pursue declaratory and injunctive relief.

25 Plaintiff has not alleged that he intends to continue purchasing 7UP Antioxidant, or that

26 the labeling and advertising practices of which he complains are likely to cause him ongoing or

27 future injury.  Instead, Plaintiff alleges that he would not have purchased 7UP Antioxidant but for

28 his inaccurate beliefs concerning its fruit content, antioxidant content, and health benefits.

1   Accordingly, Plaintiff lacks Article III standing to pursue declaratory and injunctive relief and his

2   lawsuit must be dismissed.

3       At the pleadings stage, a plaintiff bears the burden to plead facts showing that he has

4   Article III standing to pursue the relief that he seeks.  *See Parks v. Los Angeles Unified Sch. Dist.*,

5   No. 01-55135, 33 Fed. App'x 291, 292 (9th Cir. Mar. 21, 2002).  To meet the Article III standing

6   requirement, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and

7   particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly

8   traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely

9   speculative, that the injury will be redressed by a favorable decision."  *Friends of the Earth, Inc.

10  v. Laidlaw Env't Servs. (TOC) Inc.*, 528 U.S. 167, 180–81 (2000).

11      A plaintiff must demonstrate standing for each type of relief sought.  *Summers v. Earth

12  Island Inst.*, 555 U.S. 488, 493 (2009).  To obtain a declaratory judgment or injunction, a plaintiff

13  must demonstrate that he is "realistically threatened by a *repetition* of the violation" for which he

14  seeks declaratory and injunctive relief.  *See Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir.

15  2006) (quoting *Armstrong v. Davis*, 275 F.3d 849, 860–61 (9th Cir. 2001) (emphasis in original)).

16  "Past exposure to illegal conduct does not in itself show a present case or controversy regarding

17  injunctive relief . . . if unaccompanied by any continuing, present, adverse effect."  *O'Shea v.

18  Littleton*, 414 U.S. 488, 495–96 (1974).

19      Courts in this District have applied these standards to conclude that named plaintiffs

20  lacked standing to seek prospective relief on behalf of putative classes.  In *Cattie v. Wal-Mart

21  Stores, Inc.*, 504 F. Supp. 2d 939 (S.D. Cal. 2007), the court ordered the plaintiff to show cause

22  why her claims for declaratory and injunctive relief under the UCL and CLRA pertaining to Wal-

23  Mart's alleged false advertising concerning the thread count of its linens should not be dismissed

24  for lack of standing.  The court found that even if the plaintiff had been injured by Wal-Mart's

25  advertising, "it is unclear how prospective relief will redress her injury, since she is now fully

26  aware of the linens' thread count."  *Id.* at 951.  The court further found that if the plaintiff herself

27  could "not seek injunctive relief, the standing of unnamed class members will not suffice to give

28  the Court jurisdiction to grant it."  *Id.* (citing *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045

- 6 -

1    (9th Cir. 1999)).[2]

2          Similarly, in *Campion v. Old Republic Home Protection Co.*, 861 F. Supp. 2d 1139 (S.D.

3    Cal. 2012), the court held that the plaintiff lacked Article III standing to pursue injunctive relief

4    under the UCL against a home warranty plan provider.  The court found that the plaintiff could

5    "not establish that he is under any threat of suffering actual or imminent future harm" because he

6    no longer owned one of the offending policies and "testified that he does not ever intend to

7    purchase another one."  *Id.* at 1150.  The court found that "even if Plaintiff were to purchase

8    another home warranty plan from Defendant, he now has knowledge of Defendant's alleged

9    misconduct," and therefore "cannot show he is realistically threatened by a repetition of the

10   alleged violation."  *Id.*  The court also rejected the plaintiff's argument that standing should be

11   evaluated under the more lenient California state law standard, finding that "Article III imposes a

12   jurisdictional requirement that is more stringent than the UCL, and which, with respect to

13   Plaintiff's claim for injunctive relief, is not satisfied."  *Id.* at 1149.

14         Echoing the reasoning in *Cattie* and *Campion*, courts in other districts recently have held

15   that named plaintiffs lack standing to pursue class claims for injunctive relief aimed at food and

16   beverage labeling.  In *Robinson v. Hornell Brewing Co.*, No. 11-2183 (JBS–JS), 2012 WL

17   1232188 (D.N.J. Apr. 11, 2012), the court refused to certify an injunction-only class of New

18   Jersey consumers who had purchased Arizona iced tea beverages labeled "100% Natural" on

19   grounds that the named plaintiff lacked standing to pursue injunctive relief.  The court observed

20   that the named plaintiff had testified that he had no intention of purchasing Arizona products in

21   the future regardless of whether Arizona changed its labeling practices to conform with his views

22   regarding "natural" products.  *Id.* at *4.  Based on that testimony, the court concluded that the

23   plaintiff "cannot demonstrate that he is likely to suffer future injury from Defendant's labeling

24   practices" and therefore lacked standing to bring claims for injunctive relief.  *Id.* at *4–7.

25         Similarly, in *Veal v. Citrus World, Inc.*, No. 2:12-cv-801-IPJ, 2013 WL 120761 (N.D.

26   Ala. Jan. 8, 2013), the court dismissed a class action lawsuit on grounds that the plaintiff failed to

27

28   _____
     [2] Shortly after the court entered its show cause order, the parties filed an agreed stipulation to dismiss the case.

adequately allege standing to pursue claims that packages of "Florida's Natural Orange Juice" were improperly labeled "100% orange juice."  With respect to the plaintiff's claims for injunctive relief, the court found that the plaintiff "did not allege how he will suffer a future injury," and therefore could not demonstrate "that his injury is likely to be redressed by a favorable ruling." *Id.* at *6.  As a result, the court held that the plaintiff lacked standing to pursue his claims. *Id.* at *11.

Like the plaintiffs in *Cattie*, *Campion*, *Robinson*, and *Veal*, Plaintiff lacks standing to pursue his claims for declaratory and injunctive relief because he is fully aware of DPSU's alleged misrepresentations concerning 7UP Antioxidant, and there is no pleading or proof that Plaintiff intends to purchase 7UP Antioxidant in the future.  Instead, Plaintiff alleges that he "would not have purchased the [7UP Antioxidant] Products" had he "known at the time he purchased" them that they did not contain real fruit or antioxidants derived from real fruit. Compl. ¶ 14.  Given that Plaintiff now knows "the truth about the Defendant's Products," he will not purchase them in the future.  *See id.*  Accordingly, Plaintiff is under no "threat of suffering actual or imminent future harm" as a result of DPSU's labeling and advertising practices, *see Campion*, 861 F. Supp. 2d at 1150, and lacks standing to pursue declaratory and injunctive relief against those practices.  Because Plaintiff cannot satisfy the threshold requirement that he plead facts sufficient to demonstrate standing, his lawsuit must be dismissed.

**B.** **Plaintiff's fruit and antioxidant claims are preempted.**

Under the Supremacy Clause, federal law is the "supreme law of the land."  U.S. Const., art. VI, cl. 2.  With respect to food and beverage products under the FDA's purview, Congress (through the FDCA) and the FDA (through its related regulations) have established a comprehensive regulatory regime, encompassing some 4,000 pages and 1,300 separate parts of the Code of Federal Regulations (filling nine full volumes).  Among other topics, these detailed provisions prohibit "misbranding" of food, 21 U.S.C. § 331(b), and grant the FDA exclusive authority to ensure that "foods are . . . properly labeled" on behalf of all consumers, *id.* § 393(b)(2)(A).  So all-encompassing is this federal regulatory regime that private litigants are prohibited from suing to enforce compliance with it.  21 U.S.C. § 337(a); *see Buckman Co. v.*

*Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 n.4 (2001).  The uniform federal food and beverage labeling system is important because it avoids a patchwork of state regulations that would force manufacturers to "print 50 different labels . . . ."  *Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 426 (7th Cir. 2011).

In 1990, Congress amended the FDCA by enacting the National Labeling and Education Act ("NLEA"), specifically to "'clarify and to strengthen [the FDA's] authority to require nutrition labeling on foods . . . .'"  *Nat'l Council for Improved Health v. Shalala*, 122 F.3d 878, 880 (10th Cir. 1997) (quoting H.R. Rep. No. 101-538, at 7 (1990), reprinted in 1990 U.S.C.C.A.N. 3336, 3337).  Among other things, the NLEA imposed uniform requirements for ingredient labeling, juice labeling, flavor labeling, nutrition labeling in the now ubiquitous "Nutrition Facts" box, and nutrient content claims.  Nutrition Labeling and Education Act of 1990, Pub. L. No. 101-535, 104 Stat. 2353.

Most pertinent here, the NLEA includes express preemption provisions that prohibit "any requirement for the labeling of food . . . that is not identical to" federal regulations.  21 U.S.C. § 343-1(a)(1)-(3); *see also id.* § 343-1(a)(2) (addressing the percent juice statement that must appear on fruit and vegetable juice beverages).  The FDA's regulations define "not identical to" broadly to mean any "State requirement directly or indirectly impos[ing] obligations" that are "not imposed by" federal law or that "[d]iffer from those specifically imposed by" federal law. 21 C.F.R. § 100.1(c)(4).  As a result, "[c]onsumer protection laws (such as the UCL) are preempted if they seek to impose requirements" that vary from those mandated by federal law, or if that would be the practical effect of their enforcement.  *Astiana v. Ben & Jerry's Homemade, Inc.*, No. 10-4387, 2011 WL 2111796, at *8 (N.D. Cal. May 26, 2011) (citing *Wyeth v. Levine*, 555 U.S. 555 (2009)); *see also Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.*, 642 F. Supp. 2d 1112, 1121–22 (C.D. Cal. 2009) (plaintiff cannot "extend[] its claims in a manner that would impose requirements that are different from federal standards under the [FDCA] and FDA").

1          **1.      Plaintiff's fruit claims are preempted because they would impose**

2          **requirements that are not "identical to" federal law.**

3          Plaintiff bases his challenge to DPSU's product labeling of 7UP Antioxidant in part on his

4   allegations that the use of fruit images on the product labels is misleading.  In particular, he

5   claims that "visual images of cherries, berries or pomegranates on Product labeling, marketing,

6   and/or advertising represents to the reasonable consumer that the Products contain Antioxidant

7   content from real cherries, berries, raspberries, blackberries, or cranberries or Antioxidant-rich

8   pomegranates, or that the Products contain extracts from these fruits," when, in fact, "the

9   Products do not contain any 'real' cherries, berries, or pomegranates, or even natural extracts

10  from those fruits."  Compl. ¶¶ 22–23.  Plaintiff's challenge to DPSU's use of fruit images is an

11  impermissible attempt to impose labeling requirements different from those mandated by the

12  FDA.  Thus, Plaintiff's claims based on this challenge are preempted.

13         Federal law expressly preempts Plaintiff's claims related to the use of fruit images on

14  product labels.  The FDCA dictates the labeling that is required for flavors under 21 U.S.C.

15  section 343(i)(2), a provision that is expressly preemptive under 21 U.S.C. section 343-(1)(a)(2).

16  For products with flavors such as those in 7UP Antioxidant, FDA's regulations require

17  declaration of the flavors in a specific manner as part of the product's name.  21 C.F.R.

18  § 101.22(i)(1).  The front labels of Defendant's products declare flavors in a manner consistent

19  with these regulatory requirements (e.g., "Cherry Flavored Soda With Other Natural Flavors").

20  *See* Exhibit 2 (Declaration of Danh Loyd ("Loyd Decl.")) at Exs. A–B

21         FDA regulations permit manufacturers "to use the name and image of a fruit on a

22  product's packaging to describe the characterizing flavor of the product even where the product

23  does not contain any of that fruit, or contains no fruit at all."  *Dvora v. Gen. Mills, Inc.*, No. 11-

24  1074-GHW, 2011 WL 1897349, at *4 (C.D. Cal. May 16, 2011) (emphasis added); 21 C.F.R.

25  § 101.22(i).  Any contrary rule would prohibit food and beverage manufacturers from explaining

26  to consumers through the use of words and depictions what their fruit-flavored products tasted

27  like.  Several recent cases have rejected similar attempts to base claims on the use of fruits to

28  describe the product's characterizing flavor.  *See, e.g., Hairston v. S. Beach Beverage Co.*, No.

12-1429-JFW, 2012 WL 1893818, at *3 (C.D. Cal. May 18, 2012) (holding that "Plaintiff's claims related to Defendant's use of the names of various fruits to describe the different flavors of Lifewater are preempted"); *McKinniss v. Sunny Delight Beverages Co.*, No. 07-02034-RGK, 2007 WL 4766525, at *4 (C.D. Cal. Sept. 4, 2007) ("FDA regulations permit illustrations of fruit on product labels to indicate that product's 'characterizing flavor,' even where the product contains no ingredients derived from the depicted fruit.").

Furthermore, Plaintiff would be asking this court to establish a requirement regarding the declaration of the percent juice in 7UP Antioxidant that conflicts with the expressly preempted federal requirements.  The FDCA requires beverages that purport to contain juice to bear "a statement with appropriate prominence on the information panel of the total percentage of such fruit or vegetable juice contained in the food," a provision that is expressly preemptive.  21 U.S.C. § 343(i)(2); 21 U.S.C. §343-1(a)(2).  The FDA's expressly preemptive regulations provide that declaration of the percent juice is not required for products such as 7UP Antioxidant that contain minor amounts of juice or fruit flavor for flavoring and are labeled with a descriptor such as "flavored."   21 C.F.R.  § 101.30(c); s*ee* 21 U.S.C. § 343-1(a)(2).   Nonetheless, 7UP Antioxidant's label plainly states that the product "contains no juice."  Loyd Decl. at Exs. A–B.

Thus, because the FDCA's "comprehensive scheme governing the labeling of flavors and flavorings in food products" expressly allows DPSU to use fruit names and images to describe 7UP Antioxidant's flavor regardless of actual fruit content, and the expressly preemptive regulations specifically exempt this product from the percent juice declaration, and because the Complaint attempts to impose labeling requirements different than federal law, Plaintiff's claims related to the use of fruit names and images on product labels are preempted.  *See, e.g., Dvora*, 2011 WL 1897349, at *3–6 (finding preemption where CLRA and UCL claims challenged use of the words "Blueberry Pomegranate" in labeling a cereal not containing any blueberries or pomegranates); 21 U.S.C. § 343-1(a)(2), (3) (expressly preempting any state law claims that are not identical to the requirements set forth under 21 U.S.C. § 343(i), (k), and accompanying regulations).

1

    **2.**    **Plaintiff's antioxidant claims are preempted because they, too, would**

2

    **impose requirements that are not "identical to" federal law.**

3        Plaintiff's antioxidant claims also should be dismissed because they are preempted by

4  federal law specifically governing the use of "antioxidant" nutrient-content claims.   Plaintiff

5  urges that DPSU's use of the term "antioxidant" is misleading because 7UP Antioxidant contains

6  insufficient vitamin E to provide significant health benefits, Compl. ¶¶ 35–37; contains

7  ingredients that are purportedly harmful to consumers health, *id.* ¶¶ 44–48; contains vitamin E

8  that is not derived from actual fruits and vegetables, *id.* ¶ 29; and fails to provide the same health

9  benefits as whole fruits and vegetables, *id.* ¶¶ 33–34.   Plaintiff's challenge would impose

10  requirements on DPSU that differ from those imposed by federal law governing the permissible

11  use of the term "antioxidant," and is therefore preempted.

12        Federal law authorizes use of the term "antioxidant" on food labeling as part of a nutrient-

13  content claim when four criteria are met: (1) a Reference Daily Intake ("RDI") has been

14  established for the nutrient; (2) the nutrient has "recognized antioxidant activity;" (3) the nutrient

15  is present in the food in sufficient quantity to support a "good source" claim for that nutrient; and

16  (4) the name of the nutrient is included as part of the claim or is referenced elsewhere on the same

17  panel through use of a symbol (*e.g.*, an asterisk).   21 C.F.R. § 101.54(g)(1)–(4).   Each of those

18  criteria are met in this case.   First, an RDI has been established for the antioxidant vitamin E.   21

19  C.F.R. § 101.9(c)(8)(iv).   Second, the FDA has recognized vitamin E as an antioxidant vitamin.

20  *See* 62 Fed. Reg. 49868, 49874 (Sept. 23, 1997) (noting that vitamin E is a nutrient that the FDA

21  had concluded is a "direct antioxidant"); 60 Fed. Reg. 67184, 67190 (Dec. 28, 1995) ("The basic

22  biological function of vitamin E was found to be as an antioxidant . . . ."); 56 Fed. Reg. 60624,

23  60625 (Nov. 27, 1991) (noting that vitamins C and E "are vitamins that function as

24  antioxidants").   Third, vitamin E is present in 7UP Antioxidant products in a quantity—fifteen

25  percent of the RDI per twelve-ounce can—sufficient to qualify for a nutrient-content claim using

26  terms such as "good source" or "contains."   *See* 21 C.F.R. § 101.54(c) (requiring that "good

27  source" may be used on labels of foods containing "10 to 19 percent of the RDI" for a given

28  nutrient per reference amount customarily consumed); *see* Loyd Decl. at Exs. A–B.   Fourth, the

1   names of the 7UP Antioxidant products are accompanied by double asterisks that refer consumers

2   to the nutrient content claim on the label, "contains antioxidant vitamin E," as required by FDA

3   regulation.  *See* 21 C.F.R. § 101.54(g)(4); Loyd Decl. at Exs. A–B.

4        Plaintiff's lawsuit would prohibit the use of the "contains antioxidant vitamin E" nutrient-

5   content claim authorized by the FDA and impose different, heightened criteria on use of the term

6   "antioxidant" on food product labels.  Plaintiff would require, unlike the FDA, that product labels

7   omit the word "antioxidant" unless they contain quantities of antioxidant vitamins sufficient to

8   confer health benefits as determined by a group of Plaintiff's hand-picked scientists—a

9   requirement differing from the good source level requirement of Federal law.  Plaintiff also

10  wishes to impose additional requirements on the other constituent ingredients of the product—

11  that the product not contain certain other ingredients that Plaintiff believes are potentially harmful

12  to human health—despite such ingredients being permitted under federal law.  Plaintiff further

13  wishes to impose an additional requirement regarding the nature of the antioxidant—that it must

14  come from real fruit—despite federal law expressly recognizing vitamin E as a permissible

15  antioxidant without reference to its source.  Those heightened requirements run afoul of the

16  NLEA's express preemption provision and must be dismissed.  21 U.S.C. § 343-1(a)(5).

17       Plaintiff also alleges that products whose labels bear fruit images and the word

18  "antioxidant" must contain actual fruit and match the health profile of that fruit.  That combined

19  "fruit" and "antioxidant" claim is preempted three ways as it runs counter to the FDA's regulation

20  governing antioxidant labeling, depends upon preempted claims regarding fruit imagery, and

21  would conflict with the regulations that specifically exempt products like 7UP Antioxidant from

22  the percent juice declaration requirements.  In short, no matter how Plaintiff presents his claims,

23  they are inconsistent with federal law and must be dismissed as expressly preempted under the

24  NLEA.

25       **C.     Plaintiff has failed to plead a claim based on the FDA's Fortification Policy**

26       **because the Policy does not create an enforceable private right of action.**

27       The Fortification Policy is a guidance document that does not create a private right of

28  action under federal or California law.  The FDA's Fortification Policy is not a binding

- 13 -

regulation; rather, it is a non-binding "guideline." *See* 45 Fed. Reg. 6313, 6316 (Jan. 25, 1980) (stating that the Fortification Policy is a "guideline," and that "'FDA guidelines state procedures or standards of general applicability that are not legal requirements"); *see also* 21 C.F.R. § 10.115(d)(1) ("Guidance documents do not establish legally enforceable rights or responsibilities."). Plaintiff cannot use California law to transform that non-binding guideline into a private right of action.[3]

While the Fortification Policy is generally not binding, there have been limited and specific regulations that are not at issue here in which the FDA gave the policy binding effect by incorporating it into those regulations. In 1997, the FDA incorporated the Fortification Policy into a final rule applicable to the use of the words "more," "fortified," "added," "extra," "plus," and "high potency" to describe the level of nutrients in foods. 62 Fed. Reg. 49868, 49881 (Sept. 23, 1997) ("While it is true that the fortification policy is only a guideline, in the context of new § 101.54(1)(ii), FDA has subjected the use of . . . [the fortification policy] to notice and comment rulemaking."); *see also* 21 C.F.R. § 101.54(e)(1)(ii), (f)(3). The FDA did not, however, incorporate the Fortification Policy into other regulations, including the regulation governing "antioxidant" nutrient-content claims. *See* 21 C.F.R. § 101.54(g). Accordingly, the fortification policy only operates as a guideline and is not legally binding for foods (such as 7UP Antioxidant) bearing antioxidant nutrient-content claims and lacking those specified characterizing claims such as "more" or "fortified."[4]

---

[3] Even if the Fortification Policy were a binding regulation, it would not be enforceable as private litigants are barred from suing to enforce compliance with the FDCA or its implementing regulations. 21 U.S.C. §337(a); *see also POM Wonderful LLC v. Coca-Cola Co.*, 679 F.3d 1170, 1175 (9th Cir. 2012) (holding that "the FDCA may be enforced only by the FDA or the Department of Justice"); *Mut. Pharm. Co. v. Ivax Pharms., Inc.*, 459 F. Supp. 2d 925, 934 (C.D. Cal. 2006) (holding that "the FDCA and its implementing regulations may not be privately enforced").

[4] This distinction is aptly summarized in the FDA's April 14, 2011 letter to Miles V. McEvoy, which Plaintiff references in his Complaint. In it, the FDA explains the circumstances under which the FDA will take enforcement action under the Fortification Policy:

> FDA fortification policy (21 CFR 104.20) is expressed as a series of recommendations which manufacturers are urged to follow if they elect to add nutrients . . . to a food for human consumption. . . . Although the policy is primarily used as guidance, the provisions of the fortification policy have been incorporated into two labeling regulations which have the force and effect of law: 21 CFR 101.54(e) Nutrient content claims for "More" and 21 CFR 101.65(d)

1     The Fortification Policy is not independently enforceable under California's Sherman

2   Law.  The Sherman Law provides that a food is misbranded under California law if, *inter alia*, its

3   labeling does not conform with the requirements for nutrition labeling, nutrient content, or health

4   claims set forth in the FDCA and the "*regulations adopted pursuant thereto*."   Cal. Health &

5   Safety Code §§ 110665, 110670 (emphasis added).   Because the Fortification Policy is not a

6   regulation adopted pursuant to the FDCA, violation of the policy does not constitute misbranding

7   under the Sherman Law.  Nor does it constitute "unlawful conduct" under the UCL.

8   **D.     Plaintiff's antioxidant, fruit, Fortification Policy, and regulatory claims are**

9   **facially implausible and inadequately pled.**

10     Plaintiff's antioxidant, fruit, Fortification Policy, and regulatory claims should be

11   dismissed because they fail to meet the basic test of facial plausibility.   A complaint must

12   "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

13   face.'"   *Ashcroft*, 556 U.S. at 678.   "A claim has facial plausibility when the plaintiff pleads

14   factual content that allows the court to draw the reasonable inference that the defendant is liable

15   for the misconduct alleged."   *Id.*  In a food labeling case, "where a Court can conclude as a matter

16   of law that members of the public are not likely to be deceived by the product packaging,

17   dismissal is appropriate."  *Hairston*, 2012 WL 1893818, at *4; *see also Werbel v. Pepsico, Inc.*,

18   No. 09-04456, 2010 WL 2673860, at *5 (N.D. Cal. July 2, 2010) (holding that plaintiff "failed to

19   establish that a reasonable consumer would likely be deceived into believing that Cap'n Crunch

20   [Crunchberries] derives some of its nutritional value from fruit").

21     To state a claim under the UCL and FAL, a plaintiff must allege facts showing that the

---

Nutrient content claim for "Healthy."  Consequently, FDA may issue a warning
letter and take enforcement action if a manufacturer markets a food bearing one
of these nutrient content claims and the food contains a nutrient addition that is
inconsistent with the fortification policy.

*See* Exhibit 1 (Declaration of Ryan Bangert ("Bangert Decl.")) at Ex. A.  Plaintiff's citation to *Ackerman v. Coca-
Cola*, No. 09-0395, 2010 WL 2925955 (E.D.N.Y. July 21, 2010), also lacks force.  The claim at issue in the quote
from *Ackerman* recited in paragraph 27 of the Complaint was a "more" nutrient-content claim covered by 21 C.F.R.
section 101.54(e) where the Fortification Policy is binding.  The same also applies for the "healthy" regulation
discussed in *Ackerman*, which specifically requires compliance with the Fortification Policy.  *See* 21 C.F.R. §
101.65(d)(iv).  None of those provisions are at issue in this lawsuit.

1    alleged misrepresentation would be likely to deceive a "reasonable consumer." *Hairston*, 2012

2    WL 1893818, at *4 (citing *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)).

3    "'Likely to deceive' implies more than a mere possibility that the advertisement might

4    conceivably be misunderstood by some few consumers viewing it in an unreasonable manner."

5    *Rooney v. Cumberland Packing Corp.*, No. 12-cv-0033-H, 2012 WL 1512106, at *3 (S.D. Cal.

6    Apr. 16, 2012) (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (Cal. Ct.

7    App. 2003)).   Rather, the advertisement must be such that "'it is probable that a significant

8    portion of the general consuming public or of target consumers, acting reasonably in the

9    circumstances, could be misled.'" *Id.* (quoting *Lavie*, 105 Cal. App. 4th at 508).

10           Plaintiff fails to allege facts showing that a significant portion of the general consuming

11   public, acting reasonably, would be deceived by DPSU's use of "antioxidant" and fruit images on

12   7UP Antioxidant labels and DPSU's alleged violation of the Fortification Policy or FDA

13   regulations.   To the contrary, it is unlikely that any consumer would be deceived by the

14   information contained on DPSU's 7UP Antioxidant labels, which are accurate.   None of the

15   allegedly misleading aspects of the 7UP Antioxidant label identified by Plaintiff alter that

16   conclusion.

17           First, Plaintiff alleges that the amount of vitamin E in a 12-ounce can of 7UP Antioxidant

18   provides only fifteen percent of the RDI established by the FDA, and that this amount is

19   insufficient to confer health benefits on humans.   Compl. ¶¶ 36.   Yet nowhere in the Complaint

20   does Plaintiff allege that DPSU labeled, advertised, or promoted a 12-ounce can of 7UP

21   Antioxidant as containing anything other than fifteen percent of the RDI for vitamin E.   Nor does

22   Plaintiff allege that DPSU made *any* health-benefit claims with respect to 7UP Antioxidant.

23   Indeed, 7UP Antioxidant labels contain the word "Antioxidant" without any modifying or

24   characterizing language to suggest that consumers will achieve health benefits or receive anything

25   more than the precise amount of vitamin E disclosed in the nutrition facts panel.

26           Second, Plaintiff alleges that DPSU misled consumers to believe that 7UP Antioxidant

27   would confer health benefits that are "the same or similar to the Antioxidant-related health

28   benefits provided by fruits and vegetables."   Compl. ¶ 34.   Nowhere, however, does Plaintiff

allege that DPSU labeled, advertised, or promoted 7UP Antioxidant as a replacement for whole fruits and vegetables.  Nor does Plaintiff allege that DPSU represented 7UP Antioxidant to possess the same health profiles and characteristics as those foods.  Plaintiff surely does not expect this Court to believe that any reasonable consumer would equate drinking a well-known fruit-flavored carbonated soda beverage with eating a fresh pomegranate or consuming real berries, particularly when the product's statement of identity on the label explains that it is a "Cherry Flavored Soda With Other Natural Flavors" and the ingredient panel clearly discloses the absence of fruit content.  Furthermore, use of the word "soda" in the product's name appropriately describes the nature of the food as a carbonated soft drink.  21 C.F.R. § 101.3(b).

Third, Plaintiff alleges that 7UP Antioxidant contains ingredients that are "harmful or potentially harmful to human health," and points to the ingredients high fructose corn syrup ("HFCS"), acesulfame potassium, aspartame, and Red 40.  Compl. ¶ 38.  Yet Plaintiff makes no allegation that DPSU misrepresented the presence of those ingredients in its 7UP Antioxidant products or failed to list them on the appropriate product ingredient panels.  Indeed, DPSU consistently lists those ingredients in the FDA-required ingredient statements of its regular and diet 7UP Antioxidant soft drink products.  *See* Loyd Decl. at Exs. A–B.  Moreover, each of those ingredients is accepted by the FDA as appropriate and safe for use in the food supply.  *See* 21 C.F.R. § 74.340(c) ("Red 40 may be safely used for coloring foods"); 21 C.F.R. § 172.800 ("Acesulfame potassium . . . may be safely used as a general-purpose sweetener and flavor enhancer in foods generally"); 21 C.F.R. § 172.804 ("aspartame may be safely used in food in accordance with good manufacturing practice"); 21 C.F.R. § 184.1866 (high fructose corn syrup "generally recognized as safe").

Fourth, Plaintiff alleges that the juxtaposition of the word "antioxidant" and images of fruits and berries on 7UP Antioxidant products causes consumers to mistakenly believe that the antioxidant content of those products is derived from actual fruit.  Compl. ¶ 29.[5]  As detailed

---

[5] The absurdity of the allegation is reinforced by the fact that fruits are not a primary source of vitamin E.  According to the National Institutes of Health, the most common sources of vitamin E in the diet are nuts, seeds, vegetable oils, and green leafy vegetables.  *See* Dietary Supplemental Fact Sheet: Vitamin E (available at http://ods.od.nih.gov /factsheets/Vitamin E-HealthProfessional/).

above, federal law expressly permits DPSU's use of fruit images, and Plaintiff fails to state a claim based only on a single word—"antioxidant"—that accurately communicates the presence of vitamin E in 7UP Antioxidant consistent with FDA regulations.  *See Hairston*, 2012 WL 1893818, at *4 (holding that, once preempted statements regarding fruit names were removed, plaintiff's claim was based on a single, out-of-context phrase that failed to support a UCL, FAL, or CLRA claim).

Fifth, Plaintiff alleges that DPSU adds vitamin E to its 7UP Antioxidant products in violation of the non-binding Fortification Policy, which states the FDA's guidance that snack foods, such as carbonated sodas, should not be fortified with nutrients.  Compl. ¶¶ 30–33; *see* 21 C.F.R. § 104.20(a).  Yet Plaintiff does not allege any facts demonstrating that consumers were misled by the alleged violation, or whether a reasonable consumer was even aware of the Fortification Policy.  And a truly informed consumer would know that the Fortification Policy has not been incorporated into the regulation governing antioxidant nutrient content claims, rendering it advisory with respect to 7UP Antioxidant.

Sixth, Plaintiff alleges in conclusory fashion that DPSU violated California's Sherman Law, the FDCA, and a litany of FDA labeling regulations, but fails to explain how those violations occurred or how they may differ (if at all) from Plaintiff's preempted fruit and antioxidant claims.  Compl. ¶¶ 55–63.  The statutes referenced by Plaintiff contain generic bars on "false or misleading" labeling or misbranding and add nothing of substance to Plaintiff's claims.  *See* Cal. Health & Safety Code §§ 110660, 110765; 21 U.S.C. § 343(a).  Similarly, Plaintiff's citation to various FDA regulations add nothing because they contain generic prohibitions on omissions of material facts, 21 C.F.R. § 1.21, or apply to "health claims" or statements about the "amount or percentage of a nutrient" that are neither present on the 7UP Antioxidant labels nor at issue in this lawsuit, 21 C.F.C. §§ 101.14(d)(2)(ii)–(iii) (regulating health claims), 101.13(i)(3) (regulating nutrient-content claims).  These conclusory allegations are insufficient to state a claim for relief.

**E.**     **Plaintiff fails to state claims pertaining to any advertising, marketing, or promotion of 7UP Antioxidant apart from the product labels and website.**

Throughout the Complaint, Plaintiff argues that DPSU engaged in allegedly deceptive "marketing, advertising, packaging, [and] labeling" of the 7UP Antioxidant products. *See, e.g.,* Compl. ¶¶ 57, 73, 80–81.  Despite these broad claims, Plaintiff only identifies two specific forms of marketing where allegedly false statements were made: the 7UP Antioxidant labels and the 7UP website.  Plaintiff fails to identify the who, what, when, where, or how of any other allegedly fraudulent statement.  *See Vess*, 317 F.3d at 1106.  Accordingly, Plaintiff's claims with respect to any advertising, marketing, or promotions other than the 7UP Antioxidant labels and website must be dismissed pursuant to Federal Rule of Civil Procedure 9(b).  *See Kearns*, 567 F.3d at 1124–25 (Rule 9(b) applies to claims "grounded in fraud").

**F.**     **In the alternative, this action should be dismissed under the first-to-file rule.**

This case should be dismissed with prejudice for the reasons set forth above.  However, in the alternative, this lawsuit should be dismissed under the first-to-file rule because it was filed after the *Green* lawsuit and both suits involve the same parties and issues.  While dismissal is the proper remedy here, the Court may also, in its discretion, stay or transfer this action to the Central District of California where the *Green* lawsuit is pending.

The "first-to-file rule" is a doctrine of federal comity that permits a district court to decline jurisdiction over an action "when a complaint involving the same parties and issues has already been filed in another district."  *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94–95 (9th Cir. 1982).  "In applying the 'first to file' rule, the court looks to three threshold factors: (1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of the issues."  *Blue Cove Corp. v. Odyssey Medical, Inc.*, No. 10-cv-2606-IEG(BGS), 2011 WL 1157866, at *2 (S.D. Cal. Mar. 28, 2011) (citing *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991)).  "If the case meets the requirements of the 'first to file' rule, the court has the discretion to transfer, stay, or dismiss the action."  *Id.*  All three factors of the first-to-file rule are met in this case.

First, this case was filed over one month after the *Green* lawsuit was filed.  The relevant

- 19 -

date to be used for purposes of the first-to-file rule is the date of the original filing of a lawsuit. *Id.* The *Green* lawsuit was filed on November 8, 2012. *See* Bangert Decl. Ex. B. This lawsuit was filed on December 13, 2012. Accordingly the first factor of the first-to-file rule is satisfied.

  Second, there is identity of parties because the named plaintiff and putative class in this lawsuit are all part of the putative class in the *Green* lawsuit. In a class action the putative classes—and not the class representatives—are compared to determine whether the identity of parties factor of the first-to-file rule has been satisfied. *See Adoma v. Univ. of Phoenix*, 711 F. Supp. 2d 1142, 1147 (E.D. Cal. 2010); *Persepolis Enter. v. United Parcel Serv., Inc.*, No. C-07-02379-SC, 2007 WL 2669901, at *2 (N.D. Cal. Sept. 7, 2007). The identity of parties factor only requires substantial similarity between the parties; it does not require strict identity or complete overlap. *See Inherent.com v. Martindale-Hubbell*, 420 F. Supp. 2d 1093, 1097 (N.D. Cal. 2006) ("The 'sameness' requirement does not mandate that the two action be identical, but is satisfied if they are 'substantially similar.'"); *Am. Newland Communities, L.P. v. Axis Specialty Ins. Co.*, ("'[E]xact identity is not required to satisfy the first-to-file rule. The rule is satisfied if some [of] the parties in one matter are also in the other matter , regardless of whether there are additional unmatched parties in one or both matters.'") (quoting *Intersearch Worldwide v. Intersearch Group, Inc.*, 544 F. Supp. 2d 949, 959 n.6 (N.D. Cal. 2008)) (*Askin v. Quaker Oats Co*., No. 11-CV-111, 2007 WL 517491, at *5 (N.D. Ill. Feb. 15, 2012) (finding no "significant difference" between parties based on "one month difference" in class period).

  The identity of parties factor is met here because the putative class alleged by Plaintiff is substantially similar to the putative class alleged by Green. Plaintiff seeks certification of a class comprising "all persons who, while residing in California, purchased Defendant's Products identified herein during the Class Period (the 'Class') that contain misrepresentations regarding the Product's Antioxidant qualities and/or characteristics." Compl. ¶ 42. Green, in turn, seeks certification of a broader class comprising "all persons *in the United States* who purchased Defendant's Products (as defined herein) during the Class Period." Bangert Decl. Ex. C ¶ 47 (emphasis added). Plaintiff defines "Class Period" as "December, 2008 through the present," Compl. ¶ 3, while Green defines "Class Period" as "February 2, 2009, to the present," Bangert

Decl. Ex. C ¶ 3.  Plaintiff defines "Products" as "'7UP' brand soft drinks marketed and labeled as 'Antioxidant,'" Compl. ¶ 1, while Green similarly defines "Products" as "soft drink products sold under the '7UP' brand name that Defendant marketed, labeled, and/or advertised as including antioxidants."  *Green* Compl. ¶ 1.  Because Green's putative class is susbtantially similar to Plaintiff's putative class, the identity of parties requirement is satisfied.

Third, both this lawsuit and the *Green* lawsuit raise the same issues concerning 7UP Antioxidant's labeling and advertising.  As with the identity of parties factor, the identity of issues factor likewise requires substantial similarity and not perfect identity.  *Inherent.com*, 420 F. Supp. 2d at 1097.  Both lawsuits involve the same 7UP Antioxidant products and point to identical aspects of those products' labeling—use of the term "Antioxidant" in conjunction with images of cherries, berries, and pomegranates—as false and misleading.  *Compare* Compl. ¶¶ 1–8 *with* Bangert Decl. Ex. C ¶¶ 1–14.  In addition, both lawsuits allege that 7UP Antioxidant has been fortified in violation of the FDA's non-binding Fortification Policy, contain insufficient amounts of vitamin E to provide scientifically-proven health benefits, and contain ingredients that the plaintiffs view as harmful.  Compl. ¶¶ 30–41; Bangert Decl. Ex. C. ¶¶ 40–46.[6]

"In most cases, dismissal of a second-filed action is appropriate."  *Blue Cove Corp.*, 2011 WL 1157866 at *3.  In this case, dismissal is appropriate because there is no basis to conclude that Plaintiff's claims, and those of the putative class, will otherwise be time barred or will not be advanced as part of the broader *Green* lawsuit.  However, should the Court determine that dismissal is not proper, this case either should be stayed or transferred to the Central District of California where it can be consolidated with the *Green* lawsuit.

## V.     CONCLUSION

Plaintiff's Complaint suffers from multiple defects warranting dismissal.  First, Plaintiff has not alleged standing to pursue the declaratory and injunctive relief he seeks.  Second, assuming  Second, Plaintiff's Complaint is facially defective and fails to plead a claim for several

---

[6] There are no exceptions to the application of the first-to-file rule that apply here.  "Courts decline to apply the [first-to-file] rule where there is bad faith or forum shopping or where the first-filed action is an anticipatory suit."  *Blue Cove Corp.*, 2011 WL 1157866, at *3.  There is no evidence or even suggestion that the *Green* lawsuit was brought in bad faith, for an improper purpose, or as an anticipatory action.

reasons.  Both Plaintiff's fruit and antioxidant claims are preempted and should be dismissed with prejudice.   Plaintiff's claims premised on the FDA's Fortification Policy should likewise be dismissed with prejudice because the Policy does not afford Plaintiff an enforceable private right of action.   In the alternative, Plaintiff's antioxidant, fruit, Fortification Policy, regulatory, and generic advertising and marketing claims directed to media other than the product labels should be dismissed without prejudice because Plaintiff has failed to plead facts sufficient to assert cognizable claims under Rule 12(b)(6) and Rule 9(b) of the Federal Rules of Civil Procedure. Finally, and in the further alternative, this action should be dismissed, stayed, or transferred under the first-to-file rule.

Dated: February 15, 2013                                Respectfully submitted,


                                                        By: _/s/ Kevin Sadler_____
                                                        Kevin Sadler
                                                        kevin.sadler@bakerbotts.com
                                                        Attorney for Defendants
                                                        DR PEPPER SNAPPLE GROUP, INC. and
                                                        DR PEPPER/SEVEN UP, INC.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served on all counsel of record in accordance with the Federal Rules of Civil Procedure and the Local Court Rules of the United States District Court for the Central District of California via the CM/ECF system, on February 15, 2013.

*/s/ Kevin Sadler*
Kevin Sadler

MEMORANDUM OF PTS. & AUTHS. IN SUPPORT OF
MOTION TO DISMISS (RULES 12(B)(1), 12(B)(6), AND 9(B))
NO. 13-CV-0160-H-KSC