1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

11
12

RICHARD FEFFERMAN, on behalf of himself and all others similarly situated,

13

Plaintiff,

14

vs.

15
16

DR PEPPER SNAPPLE GROUP, INC., DR PEPPER/SEVEN UP, INC.,

17

Defendants.

CASE NO. 3:13-CV-00160-H (KSC)

**ORDER:**

**(1) DENYING MOTION TO REMAND**

**(2) GRANTING MOTION TO DISMISS**

18
19
20
21
22
23
24
25
26

On February 6, 2013, Plaintiff Richard Fefferman ("Plaintiff") filed a motion to remand the case to the California Superior Court. (Doc. No. 7.) On February 15, 2013, Defendants Dr. Pepper Snapple Group, Inc. and Dr. Pepper/Seven Up, Inc. (collectively "Dr. Pepper" or "Defendants") filed their opposition to the motion to remand. (Doc. No. 16.) On March 4, 2013, Plaintiff filed his reply in support of the motion. (Doc. No. 21.) On February 15, 2013, Defendants filed a motion to dismiss the complaint. (Doc. No. 17.) On March 4, 2013, Plaintiff filed his opposition to the motion to dismiss. (Doc. No. 22.) On March 11, 2013, Defendants filed their reply in support of the motion to dismiss. (Doc. No. 23.)

27
28

On March 12, 2013, the Court submitted the matters on the papers pursuant to

the Court's discretion under Local Rule 7.1(b)(1).  (Doc. No. 24.)  For the following reasons, the Court denies the motion to remand and grants the motion to dismiss the complaint.

### Background

On December 13, 2012, Plaintiff filed a class action lawsuit in state superior court against Defendant Dr. Pepper Snapple Group, Inc, alleging causes of action for violation of California's Unfair Competition Law, California Business and Professions Code, §§ 17200, et. seq. and 17500, et. seq. ("UCL").  (Doc. No. 1-3, Class Action Complaint.)   Specifically, Plaintiff alleges that Defendants "mis[led] consumers through representations about the nutritional qualities, health qualities and ingredients of its "7UP" brand soft drinks marketed and labeled as 'Antioxidant.'" (Doc. No. 12 ¶ 1.)  Plaintiff's original complaint prayed only for injunctive and declaratory relief, asking the court to prevent Defendants from continuing to mislead consumers and "to impose necessary administration incident [to] creating internal controls" to prevent future improper marketing.  (Doc. No. 1-3 at 24.)

On January 18, 2013, Defendant Dr. Pepper Snapple Group, Inc. removed the action to this Court pursuant to the Class Action Fairness Act, 28 U.S.C. §§ 1332, 1441, 1446 and 1453 ("CAFA").  (Doc. No. 1.)  On January 25, 2013, Defendants filed a motion to dismiss the complaint arguing, among other things, that the proper defendant for Plaintiff's lawsuit is Dr. Pepper/Seven Up, Inc.  (Doc. No. 5 at 9.)  On February 6, 2013, Plaintiff filed a motion to remand the case.  (Doc. No. 7.)  On February 11, Plaintiff filed an Amended Class Action Complaint ("Amended Complaint"). (Doc. No. 12.) The Amended Complaint makes allegations substantially similar to those in the original complaint.  (See id.)  The Amended Complaint adds Dr. Pepper/Seven Up, Inc. as a defendant and additional requests for injunctive relief requiring Defendants to provide corrective notice and appoint personnel responsible for compliance with applicable marketing and advertising laws.  (Id. at 26.)
///

**Discussion**

**I.    Motion to Remand**

   **A.    Legal Standards**

Federal courts are courts of limited jurisdiction.  United States v. Mark, 530 F.3d 799, 810 (9th Cir. 2008).  "Without jurisdiction the court cannot proceed at all in any cause.   Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."  Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998).

Only cases that would have had original jurisdiction in a federal district court may be removed from state court.  28 U.S.C. § 1441(a).  The removal statute is strictly construed against removal jurisdiction, and federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance.  Provincial Gov't v. Placer Dome, Inc., 582 F.3d 1083, 1087 (9th Cir. 2009); Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).  "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper."  Gaus, 980 F.2d at 566; see also Abrego Abrego v. Dow Chemical Co., 443 F.3d 676, 685 (9th Cir. 2006) (per curiam) ("[U]nder CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction.").  Further, a "defendant may not remove a case to federal court unless the plaintiff's complaint establishes that the case 'arises under' federal law."  Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 8 (1983).  The well-pleaded complaint rule makes "the plaintiff the master of the complaint; he or she may avoid federal jurisdiction by exclusive reliance on state law."  Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987).  The district court must remand if it lacks jurisdiction over the removed case.  See Sparta Surgical Corp. v. Nat'l Ass'n Sec. Dealers, Inc., 159 F.3d 1209, 1211 (9th Cir. 1998).

The Class Action Fairness Act vests district courts with jurisdiction where "the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest

and costs," the aggregate number of proposed plaintiffs is 100 or greater, and any member of the plaintiff class is a citizen of a state different from any defendant.  28 U.S.C. § 1332(d).

### B.   Amount in Controversy

Plaintiff's motion does not contest that the present action meets the minimal diversity and class numerosity requirements of 28 U.S.C. § 1332(d).[1] (Doc. No. 7-1.) Plaintiff only argues that Defendants have not met their burden of proof in establishing that the amount in controversy exceeds $5,000,000 as required by 28 U.S.C. § 1332(d). (See id.)  Plaintiff does not seek any damages, but instead seeks injunctive relief requiring Defendants to correct their allegedly misleading advertisements and take other appropriate action to ensure future compliance with applicable laws. (Doc. No. 1-3 at 24.)  Plaintiff's Amended Complaint seeks specific but non-exhaustive court-ordered measures to require Defendants to provide corrective notice to consumers, appoint a senior manager responsible for compliance, and appoint a "consumer ombudsman." (Doc. No. 12 at 26.)[2]

"[W]hen the plaintiff fails to plead a specific amount of damages, the defendant seeking removal 'must prove by a preponderance of the evidence that the amount in

---

[1] Indeed, the complaint alleges that Plaintiff and the putative class are residents of California while Dr. Pepper Snapple Group, Inc. is a Delaware corporation with its principal place of business in Texas.  (Doc. No. 1-3 at 13.)

[2] "Although normally 'jurisdiction must be analyzed on the basis of the pleadings filed at the time of removal' without reference to subsequent amendments,' that rule applies mainly in cases where the amended complaint attempts to destroy federal jurisdiction after the case has been properly removed," rather than cases "where the amended complaint solidifie[s] rather than destroy[s] federal jurisdiction." Chabner v. United of Omaha Life Ins. Co., 225 F.3d 1042, 1046 n.3 (9th Cir. 2000) (considering federal claim added in amended complaint after removal in assessing whether district court had jurisdiction at time of final judgment) (citation omitted); see also Jacobsen v. Aurora Loan Services, LLC, 2012 WL 3257665, at *4 (N.D. Cal. Aug. 8, 2012) (citing Chabner).  Moreover, Plaintiff's original complaint requested the Court to require Defendants to take administrative measures to ensure future compliance. (Doc. No. 1-3 at 24.) Accordingly, the Court considers the relief in the original complaint as further noted in the Amended Complaint in its determination of the amount in controversy.  The Court includes the original complaint in its references to the Amended Complaint throughout this Order.

controversy requirement has been met.'" Lowdermilk v. United States Bank Nat'l Assoc., 479 F.3d 994, 998 (9th Cir. 2007). The "preponderance of the evidence" test applies in situations where, as here, the total value of a plaintiff's claims, including attorney's fees and the cost to defendants of complying with injunctive relief, is unclear. See Guglielmino v. McKee Foods Corp., 506 F.3d 696, 700-01 & n.4 (9th Cir. 2007); Green v. Staples Contract & Commercial, Inc., 2008 WL 5246051, at *2-3 (C.D. Cal. Dec. 10, 2008). Under the "preponderance of the evidence" burden, "the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount." Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996). In meeting this burden, the defendant is expected to put forth "summary-judgment-type evidence relevant to the amount in controversy at the time of removal." Valdez v. Allstate Ins. Co., 372 F.3d 1115, 1117 (9th Cir. 2004) (quotations omitted). This includes the contents of the removal petition, affidavits, declarations and "supplemental evidence later proffered by the removing defendant, which was not originally included in the removal notice." Korn v. Polo Ralph Lauren Corp., 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (citing Valdez, 372 F.3d at 1117; Cohn v. Petsmart, Inc., 281 F.3d 837, 840 n.1 (9th Cir. 2002)).

"In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." Id. The court "considers the relief a plaintiff seeks, not what the plaintiff may reasonably or ultimately obtain. Waller v. Hewlett-Packard Co., 2011 U.S. Dist. LEXIS 50408, at *8 n.3 (S.D. Cal. 2011); see also Lewis v. Verizon Commc'ns., Inc., 627 F.3d 395, 400 (9th Cir. 2010) ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability."). In class actions where the "potential cost to defendants of complying with [an] injunction exceeds [the jurisdictional minimum]," then the cost of compliance is "the amount in controversy for jurisdictional purposes." In re Ford Motor Co./Citibank (South Dakota), N.A., 264 F.3d 952, 958 (9th Cir.

2001).

Plaintiff accuses Defendants of engaging in a "widespread marketing and advertising campaign to mislead consumers about the nutritional qualities, health characteristics and ingredients of [Defendants'] products so as to increase their consumption." (Doc. No. 12 ¶ 3.) Plaintiff seeks "cessation of misleading labeling, corrective product labeling, and remedial notice directed to California consumers." (Id. ¶ 2.) Defendants offer evidence via sworn declaration that the cost to Defendants of complying with the relief Plaintiff seeks coupled with the likely attorney's fees Plaintiff may be rewarded totals over $5,000,000. See Lewis, 627 F.3d at 397-98 (finding removal jurisdiction based on sworn affidavits).

Specifically, Dr. Pepper's 7UP Branch Manager states that disposal of their unused 7Up Antioxidant packaging and vitamin E would entail a loss of $80,000 and disposal of their finished stock of 7Up Antioxidant would entail a loss of $60,000. (Doc. No. 16-4, Second Decl. of Layla Vela ("Vela Decl.") ¶ 6.) Repurchasing and reclaiming 7Up Antioxidant from retailers would cost Defendants $170,000. (Id.) Moreover, the Branch Manager states that undertaking a one month multimedia advertising campaign tailored to California to correct for alleged misrepresentations made during its previous 7UP Antioxidant advertising would cost approximately $500,000 for billboard advertisements, $85,000 to produce the billboards, $300,000 for newspaper advertisements, $3,500,000 for television commercials, and $600,000 to produce the television commercials. (Id. ¶¶ 12-13.) In total, the corrective advertisement campaign would cost Defendants approximately $4,985,000. (Id. ¶ 14.)

Defendants additionally argue that Plaintiff's attorney's fees in this matter, part of Plaintiff's relief sought, would likely be at least $300,000. (Doc. No. 16 at 14.) Defendants provide evidence of prior class actions litigated by Plaintiff's counsel to demonstrate their typical billing rate as well as evidence of attorney's fees awards in other similar food label class actions. (Doc. No. 16-2, Second Decl. of Ryan Bangert ("Bangert Decl.") ¶¶ 4-7, 9-10 & Exs. B-G.); see Brady v. Mercedes-Benz USA, Inc.,

243 F. Supp. 2d 1004, 1010-11 (N.D. Cal. 2002) (using "amount of fees commonly incurred in similar litigation" as reasonable measure of attorney's fees to determine amount in controversy). Finally, Defendants contend that appointing a senior-management-level employee as a compliance officer, as requested by Plaintiff, would cost over $900,000 per year, and hiring a consumer ombudsman would cost Defendants over $240,000 per year. (Doc. No. 16-3, Decl. of William Zeller ("Zeller Decl.") ¶¶ 4-5.)

Adding together the cost of corrective advertising, product recall, raw material destruction, attorney's fees, and a year of salary and benefits for the new employees prayed for in Plaintiff's complaint, the amount in controversy is over $5,000,000. The Court concludes that Defendants establish by a preponderance of the evidence that the amount in controversy for this case exceeds the jurisdictional minimum of $5,000,000 under CAFA. Accordingly, the Court denies Plaintiff's motion to remand the case.

## II.     Motion to Dismiss

Defendants move to dismiss the Amended Complaint in part because a substantially identical action was filed in the Central District of California over one month before Plaintiff filed his complaint. See Green v. Dr. Pepper Snapple Group, Inc., No. 2:12-CV-09567-FMO-E (C.D. Cal. filed Nov. 8, 2012).[3] The "first-to-file rule" is a doctrine of federal comity that permits a district court to decline jurisdiction over an action "when a complaint involving the same parties and issues has already been filed in another district." Pacesetter Sys. Inc. v. Medtronic, Inc., 678 F.2d 93, 94-95 (9th Cir. 1982). Generally, under the first-to-file rule, when cases involving the same parties and issues are filed in two different districts, the court with the later-filed

---

[3] A court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment. See Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001). Accordingly, the Court takes judicial notice of the Class Action Complaint and Amended Complaint filed in Green v. Dr. Pepper Snapple Group, Inc., No. 2:12-CV-09567-FMO-E, in the Central District of California, attached as exhibits B and C to the Declaration of Ryan Bangert in Support of Defendant's Motion to Dismiss First Amended Class Action Complaint. (Doc. No. 17-4 Exs. B, C.)

action has discretion to transfer, stay, or dismiss the second case in the interest of efficiency and judicial economy. Cedars-Sinai Med. Ctr. v. Shalala, 125 F.3d 765, 769 (9th Cir. 1997). "The first-to-file rule was developed to serve the purpose of promoting efficiency well and should not be disregarded lightly." Alltrade, Inc. v. Uniweld Prods., Inc., 946 F.2d 622, 625 (9th Cir. 1991) (internal quotation marks omitted). "While no precise rule has evolved, the general principle is to avoid duplicative litigation, and to promote judicial efficiency." Barapind v. Reno, 225 F.3d 1100, 1109 (9th Cir. 2000) (internal quotation marks omitted).  Pursuant to the rule, "when two identical actions are filed in courts of concurrent jurisdiction, the court which first acquired jurisdiction should try the lawsuit and no purpose would be served by proceeding with the second action." Pacesetter, 678 F.2d at 94-95.

The Ninth Circuit has three prerequisites for application of the first-to-file rule: (1) chronology of the two actions; (2) similarity of the parties; and (3) similarity of the issues. See Alltrade, 946 F.3d at 625.  If the case meets the requirements of the first-to-file rule, the court has the discretion to transfer, stay, or dismiss the action.  See id. at 628-29.  Even when the rule would otherwise apply, the court has the discretion to "dispense" with its application "for reasons of equity."  Id. at 628.  The issues and parties in the first and second action need not be identical, but "substantially similar" in order for the rule to apply. Inherent.com v. Martindale–Hubbell, 420 F. Supp. 2d 1093, 1097 (N.D. Cal. 2006) (quoting Dumas v. Major League Baseball Properties Inc., 52 F. Supp. 2d 1183 (S.D. Cal.1999), vacated on other grounds by, 104 F. Supp. 2d 1224 (S.D. Cal. June 21, 2000) aff'd, 300 F.3d 1083 (9th Cir.2002)).

As to the first factor, the Court looks to the date the original complaint was filed. Guthy-Renker Fitness, L.L.C. v. Icon Health & Fitness, Inc., 179 F.R.D. 264, 270 (C.D. Cal. 1998).  Green was filed on November 8, 2012, over a month before Plaintiff filed the case before this Court.  (See Doc. No. 17-4 Ex. B).  The first factor weighs in favor of applying the rule.

Second, the parties are substantially the same because the named plaintiff and

putative class in this lawsuit are all part of the putative class in the <u>Green</u> lawsuit.  (See Doc. No. 17-4 Ex. C ("<u>Green</u> Amended Complaint") ¶¶ 17-22.)  In  a class action the putative classes, not the class representative, are compared to determine whether the identity of parties factor of the first-to-file rule has been satisfied.  See <u>Adoma v. Univ. of Phoenix</u>, 711 F. Supp. 2d 1142, 1147 (E.D. Cal. 2010); <u>Persepolis Enter. v. United Parcel Serv., Inc.</u>, No. C-07-02379-SC, 2007 WL 2669901, at *2 (N.D. Cal. Sept. 7, 2007).  The identity of parties factor requires only substantial similarity in the parties; it does not require strict identity or complete overlap.  See <u>Am. Newland Communities, L.P. v. Axis Specialty Ins. Co.</u>, No. 11-CV-1217, 2011 WL 5359335, at *2 (S.D. Cal. Nov. 7, 2011); <u>Inherent.com</u>, 420 F. Supp. 2d at 1097; <u>Dumas</u>, 52 F. Supp. 2d at 1189.

The defendants are identical in the two cases: Dr. Pepper Snapple Group, Inc. and Dr Pepper/Seven Up, Inc.  (Doc. No. 12; <u>Green</u> Amended Complaint.)  Plaintiff seeks certification of a class comprising "all persons who, while residing in California, purchased Defendants' Products identified herein during the Class Period (the 'Class') that contain misrepresentations regarding the Product's Antioxidant qualities and/or characteristics."  (Doc. No. 12 ¶ 42.)  The plaintiff in <u>Green</u> seeks certification of a class of "all persons in the United States who purchased Defendant's Products (as defined herein) during the Class Period." (<u>Green</u> Complaint ¶ 47.)  Plaintiff defines the "Class Period" as "December, 2008 through the present," (Doc. No. 12 ¶ 3), while <u>Green</u> defines the "Class Period" as "February 2, 2009, to the present."  (<u>Green</u> Amended Complaint ¶ 3.)  Plaintiff defines "Products" as "soft drink products sold under [sic] by Defendants that were marketed, labeled and/or advertised as 'Antioxidant,'" while <u>Green</u> defines "Products" as "soft drink products sold under the '7UP' brand name that Defendants marketed as including antioxidants."  (<u>Green</u> Amended Complaint ¶ 1.)  The proposed class in this matter is subsumed within the proposed class in <u>Green</u>.  Accordingly, the two actions satisfy the requirement that they involve substantially similar parties.  See <u>Adoma</u>, 711 F. Supp. 2d at 1148 ("[T]he proposed classes for the collective actions are substantially similar in that both classes

seek to represent at least some of the same individuals.  If the collective action in Sabol is certified, plaintiff may be able to opt in.").

Third, the issues raised in the two cases are substantially similar.  "As with the similarity of parties requirement, the similarity of issues requirement does not require that the issues in the two actions be identical."  Am. Newland Communities, 2011 WL 5359335, at *3; see Inherent.com, 420 F. Supp. 2d at 1097.  The plaintiffs in both cases make substantially similar allegations.  (Doc. No. 12; Green Amended Complaint.) Specifically, the complaint in Green alleges that Dr. Pepper engaged in a misleading advertising and labeling campaign concerning 7UP Antioxidant products in violation of the UCL and the Consumer Legal Remedies Act ("CLRA"), California Civil Code § 1750, et seq.  (Green Amended Complaint.)  Both cases address the same 7UP antioxidant products and make the same allegations regarding the use of the term "antioxidant" in conjunction with images of cherries, berries and pomegranates, as well as allegations that the products violate the FDA's fortification policy, contain insufficient amounts of vitamin E to provide health benefits, and contain ingredients the plaintiffs view as harmful.  (See Doc. No. 12 ¶¶ 1-8, 27-41; Green Amended Complaint ¶¶ 1-14, 39-46.)  All of Plaintiff's UCL claims are raised in Green.  (Doc. No. 12; Green Amended Complaint.)  Green therefore addresses all of the claims brought in this case and covers the same core issues and allegations.  See Nat'l Union Fire Ins. Co. v. Payless Shoesource, Inc., No. C-11-1892, 2011 WL 3277222 (N.D. Cal. Aug. 9, 2012) ("[T]he requirement that the issues in both actions be 'substantially similar' is satisfied even where different claims are advanced in each action, so long as the 'key dispute' in each action is the same." (citing Inherent, 420 F. Supp. 2d at 1099)); Guthy-Renker Fitness, 179 F.R.D. at 270 (concluding that the similarity of the issues requirement was met where the first action sought declaratory judgment of five patents and damages for tortious interference while the second action was for patent infringement of only one of the five patents).  Because "the similarity in allegations would require the court to make similar determinations" in both cases, the issues are

13cv160

"substantially similar enough for the first-to-file rule to apply." <u>Adoma</u>, 711 F. Supp. 2d at 1148 (citing <u>Jumapao v. Washington Mutual Bank</u>, No. 06-CV-2285, 2007 WL 4258636, at *1 (S.D. Cal. Nov. 30, 2007)).

Moreover, none of the exceptions to the first-to-file rule apply here. The first-to-file rule "is not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration." <u>Pacesetter Sys., Inc. v. Medtronic, Inc.</u>, 678 F.2d 93, 95 (9th Cir. 1982); <u>see also</u> <u>Alltrade</u>, 946 F.2d at 627-28. A court "can, in the exercise of [its] discretion, dispense with the first-filed principle for reasons of equity." <u>See</u> <u>Alltrade</u>, 946 F.2d at 628. "The circumstances under which an exception to the first-to-file rule typically will be made include bad faith, anticipatory suit, and forum shopping." <u>Id.</u> (internal citations omitted). There is no suggestion or reason to believe that the <u>Green</u> lawsuit was brought in bad faith, for an improper purpose, or as an anticipatory action. The principles of equity and efficient judicial administration therefore weigh in favor of applying the first-to-file rule in this instance.

The Court concludes that all of the factors balance in favor of applying the first-to-file rule in this case. The Court therefore exercises its discretion and grants Defendants' motion to dismiss. <u>See</u> <u>Cedars-Sinai Med. Ctr.</u>, 125 F.3d at 769.

### Conclusion

The Court denies Plaintiff's motion to remand the case. Additionally, the Court grants Defendants' motion to dismiss the case based on the first-to-file rule.[4]

**IT IS SO ORDERED.**

DATED: March 12, 2013

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

---

[4] The Court exercises its discretion and declines to stay or transfer the case. <u>See</u> <u>Cedars-Sinai Med. Ctr.</u>, 125 F.3d at 769.